# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN HERNANDEZ,<br><br>          Petitioner,<br><br>vs.<br><br>DARRAL G. ADAMS,<br><br>          Respondent. | 1:04-cv-05567-TAG HC<br><br>ORDER TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |

Petitioner is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation as a result of convictions on September 28, 2001in the Superior Court of California, County of Tulare (the "Superior Court") of assault with a semi-automatic firearm (Cal. Pen. Code § 245(b)), and possession of a firearm by a felon (Cal. Pen. Code § 12021(A)(1)).  (Clerk's Transcript on Appeal ("CT") 118; Lodged Document ("LD") 12, p. 3).   Under California's Three Strikes Law, Petitioner was sentenced to an indeterminate term of 29-year-to-life for the assault conviction and given a concurrent 25-year-to-life sentence for the weapon conviction. (Id.).

1    On April 25, 2002, Petitioner filed a direct appeal in the California Court of Appeals,
2 Fifth Appellate District (the "5th DCA"). (LD 1).   On April 23, 2003, the 5th DCA affirmed
3 Petitioner's conviction in an unpublished opinion. (LD 4).  Petitioner timely filed a petition for
4 review in the California Supreme Court, which was denied on June 13, 2003.  (LD 5 & 6).
5    On April 14, 2004, Petitioner filed the instant petition.  (Doc. 1).  On January 13, 2005,
6 Respondent filed a response to the petition.  (Doc. 13).  On February 24, 2005, Petitioner
7 requested an extension of time to file his traverse (Doc. 17), which was granted.  (Doc. 19).
8 However, Petitioner never thereafter filed a traverse.  Respondent concedes that the instant
9 Petition is timely and that all of the claims therein have been exhausted.  (Doc. 13, p. 2).

## FACTUAL BACKGROUND

11    At the time of the crime, Daniel Perez, the victim, and his wife lived in a mobile home on
12 the Tule Indian Reservation.  (RT 11-12).  Charlotte Ruiz, Petitioner's mother and the victim's
13 stepsister, lived in another mobile home on the same property.  (RT 13).  Petitioner lived
14 intermittently with Ruiz.  (RT 38).  The victim's property was enclosed by a barbed wire fence.
15 (RT 13).  Ruiz's family and Perez had an ongoing dispute about whether a gate to the two
16 families' properties should be left open or closed.  (RT 38).  The gate consisted of barbed wire
17 and posts; the gate could be secured by latching wire over a metal fixture.  (RT 17).
18    The victim wanted to keep the gate closed, while Ruiz and her family, including
19 Petitioner, preferred to keep the gate open.  (RT 38).  On January 14, 2001, the victim and
20 Petitioner got into a verbal altercation over Perez's insistence that the gate remain closed.  (RT
21 22-25).  Petitioner then fired a gun at the victim's feet.  (RT 25).  Petitioner had said nothing to
22 Perez up to that point.  (Id.).   Perez told Petitioner that he had better think about what he was
23 doing.  (Id.).   Then Petitioner fired several shots on either side of the victim's head.  (RT 25).  In
24 all, about seven or eight shots were fired.  (RT 27, 76).  Perez was not hit by the shots, but his
25 left ear "rang for about a week."  (RT 26).  After firing the shots, Petitioner told Perez, "I ought
26 to just take you out or waste you right now."  (RT 28).  The victim's wife called to him and he
27 turned to leave.  (RT 28).  Petitioner walked with Perez for a distance mumbling something Perez
28 could not understand.  (RT 29).  The victim's wife then called the authorities.  (RT 29, 60, 73).

Perez's wife confirmed her husband's testimony, adding that Petitioner was "very angry." (RT 70). When the two men started arguing about the gate, Perez tried to explain to Petitioner, but Petitioner said, "Fuck that. I'm tired of all this shit....You know, I love you a lot, Joe boy, but you and my mom's driving me crazy." (RT 71). Shortly after that, Mrs. Perez saw some "fires" in the darkness, but she could not see whether Petitioner had a gun. (Id.). She first saw fire going toward the ground and then into the air. (RT 72). At the same time, she heard a loud bang, and she understood that she was hearing gunshots. (RT 72). At that point, Mrs. Ruiz called Petitioner back to her house and Perez went into his house with his wife. (RT73). Perez told his wife that his ears were ringing and that she should call 911. (Id.).

When Deputy Sheriff Manuel Cavazos arrived, it was dark and rainy. (RT 84). Ms. Ruiz refused to answer Cavazos's questions, so he took a statement from the victim and his wife. (RT 85-86). Cavazos searched for shell casings but the rain and mud made it difficult to see anything at night. (RT 87). Petitioner was not at the scene, but instead met Cavazos at the Porterville substation when Cavazos returned there to clean himself off. (RT 89). After being read his rights, Petitioner was irate throughout the interview. (RT 89-90). He indicated he was mad at the victim because the latter had closed the gate. (RT 92). Cavazos testified that Petitioner then told him:

> [I]t was the last fucking straw....[The victim] tried to give him some bullshit excuse about locking the gate, but it didn't fucking matter....[Petitioner] said that he was angry at the repeated requests that [the victim] had made to lock the gate and he was gonna tell [the victim] one way or another.

(RT 93).

After telling this to the victim, Petitioner got a "380" semiautomatic handgun from his truck and fired two shots on either side of the victim's head "mainly just to scare him." (RT 93-95). Petitioner testified that he knew it was wrong because he was a felon with a gun. (RT 94). Petitioner had his father-in-law surrender the gun later the same day. (RT 94). Cavazos identified the 380 semiautomatic gun that was brought in by Petitioner's father-in-law. (RT 95). At the police station. Cavazos showed the gun to Petitioner, asked him if this was the gun that he had used to shoot around the victim's head, and Petitioner said "yes." (RT 95).

For the defense, Ruiz testified that she suffered from asthma and it was difficult for her to open the gate when she went to the hospital during an asthma attack. (RT 133). Ruiz stated that she was awoken by Petitioner's loud questions to her husband about whether he had closed the gate. (RT 136). Petitioner then went out to check on the gate. (Id.). Petitioner was very angry with the victim about his insistence on closing the gate, and when the argument began between the victim and Petitioner, Ruiz went outside with a gun in case her son needed protection. (RT 136-137). The victim was drunk and when the two men grabbed each other, Ruiz shot her pistol twice into the air to get them to stop. (RT 138). The two then separated and went to their respective homes. (RT 139). Then Petitioner told Ruiz that he was going to leave because he would be blamed for everything. (RT 139).

Petitioner testified that he and Perez scuffled, and that during the altercation he heard the gunshots. (RT 164). Petitioner testified that he told Deputy Cavazos that he did not shoot the gun. (RT 166). Petitioner testified that Cavazos told him the authorities knew what had been going on at the property, that they only wanted the gun, that they would probably just cite Petitioner, and that it was "no big deal." (RT 168). At that point, Petitioner testified that he admitted being involved but claimed he never admitted to Cavazos that he had assaulted the victim. (Id.). Petitioner admitted he told Cavazos that he had been trying to scare the victim. (RT 172).

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d). Accordingly, the Court has jurisdiction over this action.

///

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The original petition was filed on April 14, 2004, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

**II. Legal Standard of Review**

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005)(citing Williams v. Taylor, 529 U.S. at 405). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141. Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003)(citing Williams v. Taylor, 529 U.S. at 409). Section 2254(d)(1)'s reference to "clearly established Federal law"

refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004). The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

///

### III.  Review of Petitioner's Claims

The petition alleges the following grounds for relief:

**Ground One**       Whether the state court's adjudication that the convictions were supported by substantial evidence was contrary to or an unreasonable application of clearly established federal law.

**Ground Two**       Whether the state court's ruling that it had no sua sponte duty to instruct the jury that a subjective intent only to frighten will justify an acquittal was contrary to or an unreasonable application of clearly established federal law.

**Ground Three**     Whether the trial court violated Petitioner's rights by refusing to instruct the jury on the lesser included offense of brandishing.

**Ground Four**      Whether the trial court erred in instructing the jury on conditional threat.

**Ground Five**      Whether the trial court violated Petitioner's constitutional rights under the California State Constitution.


**Ground One**       Whether the state court's adjudication that the convictions were supported by substantial evidence was contrary to or an unreasonable application of clearly established federal law.

Petitioner first contends that the state court erred in concluding that sufficient evidence was presented to support his convictions. Petitioner argues that his proximity to the victim made it very likely that if he had intended to commit a battery, he would have. (Doc. 1, p. 5). Thus, Petitioner argues, the evidence "does not permit a rational trier of fact to conclude beyond a reasonable doubt that [Petitioner] intended to commit a battery." (Id.). This contention is without merit.

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Sufficiency claims are judged by the elements defined by state law. Jackson, 443 U.S. at 324 n. 16.

In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson standard. See People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992). This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 591, 597 (1982).

Here, the 5th DCA, in its opinion, concluded that the "requisite facts" had been shown that "the defendant was aware of facts which would lead a reasonable person to realize an injury, i.e., a battery, would naturally and probably result" from his conduct. (LD 4, p. 3). In support of this conclusion, the 5th DCA noted that Petitioner had willfully fired several shots in the direction of and close to the body of the victim, and that such acts are "inherently dangerous, regardless of [Petitioner's] subjective intent only to frighten, and carried with them a strong possibility of harm, even if unintended, to the victim." (Id.). The 5th DCA further explained as follows:

> "Put differently, a reasonable person would not engage in the conduct precisely because of the high likelihood of injury. Had the victim moved or had appellant for whatever reason failed in his aim–no human being, even the best marksman, is infallible–an injury would probably have occurred."

(Id.).

Additionally, the 5th DCA noted that an actual battery occurred in that Petitioner's "shots to either side of the victim's head from a distance of two to three feet caused the victim's left ear to 'ring for about a week,' an injury which the jury could have considered in determining whether [Petitioner] was guilty of the crime." (Id. at pp. 3-4).

There is little this Court can add by way of analysis to that of the 5th DCA's opinion. Petitioner claims that his proximity to the victim negated any finding by a reasonable juror that he intended a battery because, to put it simply, at that range he could not possibly have missed the victim if he had intended to shoot him. Ergo, because he did miss, he necessarily intended to

8

miss, thus negating any mens rea for assault. However, as the 5th DCA's discussion makes clear, no one is infallible, and the proximity of Petitioner to the victim made Petitioner's conduct "inherently dangerous," regardless of his stated intentions.

Moreover, the Court must consider that the victim's testimony that he suffered a ringing in his ear for several days was uncontroverted. In California, the slightest harmful or offensive touching is sufficient for a battery. (LD 4, p. 3 (citing People v. Rocha, 3 Cal.3d 893, 899-900 n. 12 (1971)). Thus, as the 5th DCA concluded, this alone would have constituted evidence of a battery, and thus the jury's guilty finding could have been predicated on that theory alone.

For the foregoing reasons, the state court's adjudication of this issue was neither contrary to nor an unreasonable application of clearly established federal law. Thus, Ground One is denied.

**Ground Two**    **Whether the state court's ruling that it had no sua sponte duty to instruct the jury that a subjective intent only to frighten will justify an acquittal was contrary to or an unreasonable application of clearly established federal law.**

Petitioner next contends that the trial court had a sua sponte duty to instruct the jury that a subjective intent only to frighten the victim does not support a finding of guilty. This is consistent with Petitioner's defense that he intended only to scare the victim, not to assault him. Again, however, Petitioner's contention is without merit.

Initially, the Court notes that issues relating to state court jury constructions generally do not give rise to cognizable habeas claims. Petitioner's burden on habeas is to establish that the state court's failure to instruct on circumstantial evidence rose to the level of a federal constitutional error. Generally, the issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'")(quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Thus, normally, a claim that challenges the propriety of a jury instruction under state

law cannot reasonably be construed to allege a deprivation of federal rights. Van Pilon v. Reed, 799 F.2d 1332, 1342 (9th Cir. 1986). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).

A challenge to a jury instruction solely as an error under state law does not normally state a claim cognizable in a federal habeas corpus action. See Estelle, 502 U.S. at 71-72. To obtain federal collateral relief for errors in the jury charge, the petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. The constitutional significance of the omission of an instruction will depend upon the evidence in the case and the overall instructions given to the jury. See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995); see also Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982)(citing Henderson v. Kibbe, 431 U.S. at 154. Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, the petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)(whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. Henderson v. Kibbe, 431 U.S. at 154. Moreover, an individual such as Petitioner in this case whose claim involves the *omission* of an instruction "bears an especially heavy burden," because an omission is less likely to be prejudicial than a misstatement of the law. Id. at 155.

Here, the jury was correctly instructed on the elements of the offense and the court was under no sua sponte duty to instruct the jury regarding a subjective intent to frighten. It is

undisputed in California that a court must correctly instruct the jury on the burden of proof, even absent a request. People v. Mower, 28 Cal.4th 457, 483-484 (2002); People v. Smith, 135 Cal.App.4th 914, 929 (2005). Similarly, a trial court must instruct the jury on the defenses for which substantial evidence exists. People v. Panah, 35 Cal.4th 395, 484 (2005); People v. Smith, 135 Cal.App.4th at 929.

The trial court satisfied these requirements by giving the general burden of proof instruction, CALJIC No. 2.90. (CT 76). Petitioner's counsel did not request any specific instructions regarding the defense theory of the case, and did not request the instruction Petitioner now claims should have been given. The defense presented the testimony of Mrs. Ruiz, who claimed that she, not Petitioner, had possessed the gun and fired the shots at Perez. In closing argument, defense counsel argued this point to the jury, claiming that Ruiz, not Petitioner had fired the shots and that Perez, embittered over the property dispute with Ruiz, had recruited his wife to help him implicate Petitioner in order to get back at his stepsister. (RT 223). Thus, the jury was properly instructed on the elements of the offense and the burden of proof, and Petitioner was given every legal opportunity to present his version of events to the jury.

Contrary to Petitioner's assertion, then, the trial court, absent a request by Petitioner, had no duty to go beyond these general instructions to give a pinpoint sua sponte instruction tying Petitioner's purported lack of subjective intent to harm the victim to the elements of the charged offense. See People v. Saille, 54 Cal.3d 1103, 1119 (1991). A pinpoint instruction, relating specific evidence to the elements of the offense and highlighting a defense theory, must be given on request, but need not be given sua sponte. People v. Hughes, 27 Cal.4th 287, 371 (2002); People v. Mayfield, 14 Cal.4th 668, 778 (1997); People v. Grassini, 113 Cal.App.4th 765, 777 (2003). Because the defense never requested the instruction, the trial court did not err in failing to give it sua sponte. There was, therefore, no violation of California law, much less of federal law.

Thus, the state court's adjudication of this issue was neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, Ground Two must be denied.

1 **Ground Three**     **Whether the trial court violated Petitioner's rights by refusing to instruct the jury on the lesser included offense of brandishing.**

Petitioner next contends that the state court failed to instruct the jury on the lesser-included offense of brandishing. The Court disagrees.

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. Beck v. Alabama, 447 U.S. 625, 638 (1980). In a noncapital case, the failure of a trial court to instruct sua sponte on lesser included offenses does not present a federal constitutional question. Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998); Turner v. Marshall, 63 F.3d 807, 813 (9th Cir.1995), overruled on other grounds, Tolbert v Page, 182 F.3d 677 (9th Cir.1999) (en banc)(finding the application of Beck to noncapital cases barred by Teague v. Lane, 498 U.S. 288, 299-300 (1989)); James v. Reese, 546 F.2d 325, 327 (9th Cir.1976) (per curiam). However, a defendant may suffer a due process violation if the court's failure to give a requested instruction prevents a defendant from presenting his theory of the case. Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984); see also United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990) ("A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence.").

In Bashor, the Ninth Circuit recognized that a court's failure to give a lesser included instruction did not present a federal constitutional claim. Bashor, 730 F.2d at 1239. Nevertheless, the Court found "no fundamental unfairness in the trial court's failure to instruct on a lesser included offense" to a homicide charge as counsel did not request the lesser included offense instruction and the defense strategy was based "on the theory that Bashor was either guilty or not guilty of deliberate homicide." Id. Here, therefore, the trial court's failure to give the lesser-included offense instruction of brandishing did not present a federal question. Windham, 163 F.3d at 1106; Turner, 63 F.3d at 813.

The state court's refusal was not a violation of due process because it did not prevent Petitioner from presenting his theory of the case. As mentioned, defense counsel called Ruiz to testify that she had brought the gun outside and that she alone had fired it. Moreover, he argued

this theory extensively to the jury in closing argument, contending that Perez was trying to get back at Ruiz by framing her son for the shooting. The fact that the defense theory Petitioner was permitted to present to the jury was unsuccessful does not raise a federal question or implicate a federal constitutional right.

Moreover, even if Ground Three properly raised a federal question, it fails on the merits. Here, the trial court correctly instructed the jury on the lesser included offenses of simple assault and assault with a deadly weapon. (CT 90). Under California law, a trial court must instruct, sua sponte, on a lesser included offense when "the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged." People v. Sedeno, 10 Cal.3d 703, 715 (1974), overruled on other grounds, People v. Breverman, 19 Cal.4th 142 (1998).

However, in California, brandishing is not necessarily a lesser included offense of assault with a semi-automatic handgun. People v. Lipscomb, 17 Cal.App.4th 564, 569-572 (1993)(brandishing not necessarily lesser included offence of assault with deadly weapon); People v. Beach, 147 Cal.App.3d 612, 626 (1983)(same); People v. Orr, 43 Cal.App.3d 666, 673 (1974)(same); People v. Birch, 3 Cal.App.3d 167, 176 (1969)(same); People v. Diamond, 33 Cal.App.2d 518, 522-523 (1939)(same). Because brandishing was not necessarily a lesser included offense of assault with a semiautomatic weapon, the trial court was under no sua sponte duty to instruct the jury on brandishing, or even to make a determination whether substantial evidence supported the giving of such an instruction. Thus, under California law, the trial court's decision was correct. Petitioner has not cited any clearly established federal law to the contrary. Accordingly, even if the trial court's decision raised a federal issue, the failure to instruct the jury sua sponte on the charge of brandishing was neither contrary to nor an unreasonable application of clearly established federal law.

**Ground Four**     **Whether the trial court erred in instructing the jury on conditional threat.**

Next, Petitioner contends that the state court erred in instructing the jury with CALJIC No. 9.00.1, explaining that a conditional threat may constitute an assault. In its decision, the

13

5th DCA agreed with Petitioner that, under California law, this instruction was unwarranted because it was not supported by the evidence in the record. (LD 4, p. 7). However, the appellate court held that reversal was not required because "[n]othing in the record establishes that the jury here relied upon the factually unsupported theory of a conditional threat in finding appellant guilty of the charged crime of assault." (Id.). For the following reasons, the Court concludes that this contention is without merit.

As was true with Grounds Two and Three, this instructional challenge does not raise a federal question and is therefore does not entitle Petitioner to habeas relief. Estelle, 502 U.S. at 68.

However, assuming, arguendo, that it did raise a question of federal law, rather than merely a question of California law, the Court finds that the claim is without merit. In Griffith v. United States, 502 U.S. 46, 59-60 (1991), the United States Supreme Court held that a defendant's constitutional rights are not violated when a jury returns a guilty verdict on one of two theories of guilt, where one of the theories is factually supported by adequate evidence and the other is not:

> "It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance–remote, it seems to us–that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient."

Id. (quoting United States v. Townsend, 924 F.2d 1385, 1414 (7th Cir. 1991)). The Supreme Court distinguished the situation when one of two theories of guilt is unsupported by adequate evidence from that in which one of the two theories is *legally* insufficient or erroneous, the latter being a situation that would require reversal of the conviction. Id.

The California Supreme Court adopted the rationale of Griffith in People v. Guiton, 4 Cal.4th 1116, 1126 (1993). In that case, the California Supreme Court, relying on Griffith, reinstated a conviction for selling or transporting cocaine that had been reversed by the California Court of Appeal because, although sufficient evidence supported defendant's conviction for transporting cocaine, insufficient evidence had been presented that the defendant had sold cocaine. Id. at 1131. Following Griffith, the California Supreme Court held that a state

appellate court should have affirm the conviction unless the "entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." Id. at 1130.

Here, the 5th DCA expressly relied upon both Griffith and Guiton to conclude that, although no evidence was presented that Petitioner made threats to the victim prior to the shootings, "[n]othing in the record establishes that the jury here relied upon the factually unsupported theory of a conditional threat in finding appellant guilty of the charged crime of assault." (LD 4, p. 7). After reviewing the entire record, the Court agrees that nothing therein indicates that the jury based its guilty verdict on this factually unsupported theory. Thus, under Griffith, the verdict should be affirmed. That is precisely what the state court did in this case. The 5th DCA, therefore, properly applied California law and correctly interpreted the clearly established federal law as interpreted by the United States Supreme Court in Griffith. Accordingly, Ground Four must be denied.

**Ground Five**     **Whether the sentence violated Petitioner's constitutional rights under the California State Constitution.**

Petitioner finally contends that the sentence he received is cruel and unusual under the California Constitution. The Court summarily rejects this contention because it fails to state a federal claim.

As mentioned previously, federal habeas corpus relief does not lie for errors of state law. Estelle, 502 U.S. at 68. There is perhaps no clearer example of "state law" than the provisions of a state constitution. Since the habeas relief sought in Ground Five, i.e., the claim of cruel and unusual punishment under the California Constitution, is premised entirely on the state court's purported violation of its own state constitution, there cannot, by definition, be any federal violation justifying habeas relief.[1] Therefore, the state court's adjudication in this regard was not

---

[1] Petitioner at no time mentions the Eighth Amendment to the United States Constitution, nor does he mention any other federal law that might be violated as a result of what Petitioner characterizes as his grossly disproportionate sentence. To the contrary, Petitioner's Ground Five is expressly limited to a consideration of whether, under the California Constitution's proscription against cruel and unusual punishment, Petitioner's sentence is illegal. Thus, despite liberally construing this Ground Five, the Court can find nothing within it that even hints at a federal claim.

15

contrary to nor an unreasonable application of clearly established federal law. Accordingly, Ground Five must be denied.

### ORDER

Accordingly, for the reasons set forth above, the Petition for Writ of Habeas Corpus (Doc. 1), is DENIED with prejudice.

The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated:  **August 14, 2007**               /s/ Theresa A. Goldner
                                                      UNITED STATES MAGISTRATE JUDGE